IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
                                    )
Nicanor E. Casumpang,               )
                                    )
                 Plaintiff,         )
                                    )
        vs.                         )  Civil No. 12-00694 ACK-BMK
                                    )
Hawaiian Commercial and Sugar       )
Co., Paul Pacubas, and              )
International Longshore and         )
Warehouse Union, Local 142,         )
                                    )
                 Defendants.        )
                                    )
```

## ORDER GRANTING DEFENDANT INTERNATIONAL LONGSHORE WAREHOUSE UNION, LOCAL 142'S MOTION FOR SUMMARY JUDGMENT

### PROCEDURAL BACKGROUND

On December 21, 2012, Plaintiff Nicanor E. Casumpang, Jr. ("Plaintiff") filed a Complaint against Defendants Hawaiian Commercial and Sugar Company ("HC&S") and Paul Pacubas. ECF No. 1. Plaintiff's Complaint contained claims against Defendants for violations of Section 7 of the National Labor Relations Act ("NLRA") and Title VII of the Civil Rights Act of 1964. Id. at 13. On January 16, 2013, Defendants HC&S and Pacubas filed a Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(1). ECF No. 8. At the hearing held on June 26, 2013, regarding the January 2013 Motion to Dismiss, Plaintiff voluntarily withdrew his NLRA Section 7 claim

-1-

and his Title VII claim.  ECF No. 18.  Instead, Plaintiff requested leave to amend his Complaint by (1) adding the International Longshore and Warehouse Union, Local 142 ("ILWU") as a party to the case and (2) adding certain other claims against HC&S, Pacubas, and the ILWU.  Id.  The Court granted Plaintiff's request and deemed the January 2013 Motion to Dismiss as withdrawn.  Id.

Plaintiff filed his First Amended Complaint ("FAC") against HC&S, Pacubas, and the ILWU on July 22, 2013.  ECF No. 25.  The FAC alleges, inter alia, the following claims:  (1) HC&S violated the Labor Management Reporting and Disclosure Act ("LMRDA") by terminating Plaintiff's employment in retaliation for free speech activities related to his union membership, (2) HC&S violated Hawaiʻi Revised Statutes § 378-2 and 378-62 by terminating Plaintiff's employment in retaliation for his reports of unlawful practices, (3) ILWU intentionally and deliberately failed to provide Plaintiff fair representation in retaliation for Plaintiff's exercise of his free speech rights as a union member.  FAC at 20-21, ¶¶ 59-61, ECF No. 25.

On September 12, 2013, Defendant ILWU filed a Motion to Dismiss or for Summary Judgment, accompanied by a Concise Statement of Facts, declarations, and exhibits ("CSF").  ECF No. 35.  Plaintiff filed his Opposition on October 28, 2013, along

with numerous exhibits and his declaration.  ECF No. 48.  The
ILWU filed its Reply on November 4, 2013.  ECF No. 51.

Both Defendant ILWU and Plaintiff attached numerous
declarations and exhibits to their respective briefs, and both
parties acknowledged in their briefs that consideration of
materials extrinsic to the pleadings would convert a motion to
dismiss into a motion for summary judgment.  Plntf.'s Opp. at 2,
ECF No. 48; Def.'s Motion at 13, ECF No. 35-1.  Therefore, the
Court issued a minute order on November 8, 2013, to notify the
parties that Defendant ILWU's Motion to Dismiss would be
converted to a Motion for Summary Judgment.  ECF No. 55.  On
November 18, 2013, the Court held a hearing regarding this
matter.  ECF No. 56.

## FACTUAL BACKGROUND[1/]

HC&S is a sugar processing company located in Puunene,
Hawaiʻi.  FAC at 2, ¶ 3.  Plaintiff began his employment at HC&S
on July 22, 1981.  Id. at 4, ¶ 10.  In 1987, Plaintiff joined
HC&S's electrician apprentice program; Plaintiff subsequently
received his State of Hawaiʻi industrial electrical journeyman
license in July 1991 and his State of Hawaiʻi electrician
journeyman license on November 15, 1991.  Id.  Plaintiff later

---

[1/]  The facts as recited in this Order are for the purpose
of disposing of the current motion and are not to be construed as
findings of fact that the parties may rely on in future
proceedings.

received his State of Hawaiʻi electrical contractor "C-13" license on February 10, 1993.  Id.

Plaintiff was a member of the ILWU, and he held various elected and appointed positions within the union.  FAC at 4, ¶¶ 11-13.  Plaintiff won an election for the Maui Division Director position with the ILWU; however, the results of the election were challenged by the incumbent.  Id. at 5, ¶¶ 13.  Plaintiff subsequently sued the ILWU Local 142 in this Court.  Casumpang v. Int'l Longshore & Warehouse Union, Local 142, Civ. No. 98-00775 ACK-KSC.  In 2006, the parties reached a settlement after Plaintiff obtained a jury verdict for over $1 million, and the suit was dismissed with prejudice, as stipulated by the parties.  See, Casumpang v. Int'l Longshore & Warehouse Union, Local 142, Civ. No. 98-00775 ACK-KSC, ECF Nos. 234 (Judgment in a Civil Case), 286 (Settlement on the record), and 288 (Stipulated Dismissal With Prejudice); FAC at 5, ¶ 14.

It appears that at some point, Plaintiff took a leave of absence from Defendant HC&S pursuant to the Collective Bargaining Agreement ("CBA") in place between the ILWU and HC&S. FAC at 5, ¶ 15.  In January 1998, Plaintiff returned to his former position as an "electrician level D" at HC&S.  FAC at 5, ¶ 15.  In June 2001, Plaintiff was promoted to "Electrician Specialist, level B."  Id. at ¶ 16.  In March 2009, Plaintiff was apparently promoted to "mill electric shop lead man," but his

-4-

compensation remained at the "Level B" rate of pay in violation of Section 5G of the CBA.  Id. at ¶ 18.

## A. Specific Grievances

### 1. RRA11-019 - Class Grievance Regarding Favoritism and Bootlegging Violations

In May 2011, mill and power plant electricians requested the ILWU to hold a meeting with HC&S higher management to discuss favoritism and bootlegging violations by the electric shop supervisors.  FAC at 6, ¶ 20, ECF No. 25.  Plaintiff verbally expressed his views at the meeting held with HC&S factory senior vice president Anna Strobecki and factory vice president Robert Luuwai.  Id.  Approximately one week following that meeting, Plaintiff was notified by three electric shop supervisors that he was being replaced as a mill lead electrician by a "level D" electrician who had recently completed his apprenticeship, presumably with Defendant HC&S.  FAC at 6, ¶ 21. On June 6, 2011, numerous mill and power plant electricians filed a collective grievance against Defendant HC&S.  Id. at ¶ 22; Plntf.'s Opp. Ex. 1, ECF No. 48.

### 2. RRA11-023 - Grievance Regarding Improper Pay Level

Plaintiff also alleges that on June 8, 2011, mill supervisor Rudy Labuguen informed Plaintiff that factory vice president Robert Luuwai ordered Labuguen to give Plaintiff a poor evaluation, which effectively denied Plaintiff's promotion to a

"level A" rate of pay.  FAC at 7, ¶ 24.  On June 15, 2011,

Plaintiff filed a formal grievance against Luuwai and requested

the ILWU to file an unfair labor practice charge against HC&S.

FAC at 7-8, ¶ 26; Plntf.'s Opp. Ex. 4, ECF No. 48.  The ILWU

issued a Notice of Decision not to Arbitrate Grievance on April

2, 2012.  Plntf.'s Opp. Ex. 4-1, ECF No. 48.

### 3.  RRA11-024 - Grievance Regarding Supervisor Abuse

### Over the Radio

On June 8, 2011, during a mill electric shop meeting,

power plant electric shop supervisor Ted Acpal ("Acpal")

allegedly struck the back of Plaintiff's head.  FAC at 6-7, ¶ 23.

Plaintiff reports experiencing similar behavior from Acpal since

April 2008, despite Plaintiff's asking Acpal to desist.  Id.

This activity sometimes occurred in front of other employees,

including Defendant Pacubas.  Id.  On June 27, 2011, Plaintiff

filed a first-step grievance against Defendant HC&S for "working

condition [sic] and harassment in regards to the slapping and

punching incidence [sic]."  FAC at 8, ¶ 27.  However, the

grievance attached to Plaintiff's Opposition states that the

nature of the complaint is an allegation that HC&S violated House

Rule Policy 5(b) "by allowing their Supervisor to be abusive in

nature and language when communicating over the radio."  Plntf.'s

Opp. Ex. 12, ECF No. 48.  Plaintiff contends that Defendant HC&S

"failed to act or investigate the grievance" for approximately

-6-

nine months, which Plaintiff alleges is a violation of the CBA. FAC at 8, ¶ 27.  The ILWU issued a Notice of Decision not to Arbitrate this Grievance on May 7, 2012.  Plntf.'s Opp. Ex. 12-1, ECF No. 48.  Plaintiff appealed the ILWU's decision in a letter dated May 11, 2012.  Def.'s CSF Ex. 22, ECF No. 36-25.  The ILWU held a hearing regarding the decision not to arbitrate on May 25, 2012.  Def.'s CSF Ex. 23, ECF No. 36-26.

### 4. RRA11-038 - Coverall Dispute

On October 26, 2011, Plaintiff reported to Defendant Paul Pacubas, a senior electrical supervisor, about a broken grounding clip used to test run motors in the motor shop.  FAC at 10, ¶ 32.  On November 3, 2011, Strobecki informed electric shop personnel that HC&S had been cited and fined by the Occupational Safety and Health Administration for electrical safety violations.  Id. at ¶ 33.  Plaintiff states that he told Strobecki about notifying Pacubas about the broken grounding clip and Pacubas' lack of response.  Id.

Plaintiff alleges that in retaliation for making this report, Defendant Pacubas issued Plaintiff a written warning for uniform-related issues and required Plaintiff to reimburse Defendant HC&S in the amount of $310.  FAC at 11, ¶ 34.  On November 21, 2011, Plaintiff filed a first-step grievance against Defendant Pacubas and Acpal for harassment and hostile working conditions.  Id. at ¶ 34; Plntf.'s Opp. Ex. 15, ECF No. 48.  The

ILWU found that there was no violation of the CBA and notified Plaintiff of HC&S's offer to settle the grievance on January 30, 2012.  Plntf.'s Opp. Ex. 15, ECF No. 48.  The ILWU also issued a Notice of Decision Not to Arbitrate Grievance on April 2, 2012. Plntf.'s Op. Ex. 15-2, ECF No. 48.

### 5. RRA11-041 - Damage of HC&S Property

Plaintiff also asserts that Defendant Pacubas retaliated against him by filing a false report with Defendant HC&S' human resources department alleging that Plaintiff damaged HC&S property.  FAC at 11, ¶ 35, ECF No. 25.  Plaintiff filed a first-step grievance on November 21, 2011, alleging that Pacubas made false statements to retaliate against him for complaints and charges against the company.  Plntf.'s Opp. Ex. 17, ECF No. 48. Plaintiff alleges that he proved that Pacubas' accusation was false, but HC&S did not reprimand Pacubas and instead issued a written warning against Plaintiff.  FAC at 12, ¶ 35.  Plaintiff presents letters from the ILWU indicating that the union did not find a violation of the collective bargaining agreement, but that the union would settle the matter with HC&S by removing the warning from Plaintiff's file.  Plntf.'s Opp. Ex. 19-3, 19-4, ECF No. 48.  The ILWU issued a Notice of Decision Not to Arbitrate on April 2, 2012.  Plntf.'s Opp. Ex. 17-1, ECF No. 48.

**6. RRA12-001 - Suspension and Termination for Harassment of Co-Workers and Sexual Harassment of Maukele**

On December 2, 2011, Plaintiff wrote a letter to HC&S' General Manager, Rick Volner. FAC at 12, ¶ 37. In this letter, Plaintiff reported his complaints regarding hostile working conditions, harassment, unfair treatment, and physical abuse that he allegedly experienced at the electric shop and factory. Id. Plaintiff gave Defendant HC&S notice of his intent to seek legal redress regarding his concerns. Id.

Around December 19, 2011, Plaintiff learned that Defendant HC&S' legal counsel, Charles Loomis ("Loomis") was at Plaintiff's workplace. FAC at 12-13, ¶ 38. Plaintiff proceeded to meet with some co-workers during their lunch hour and stated that he would call them as witnesses because they had seen Acpal's treatment of Plaintiff. Id. Plaintiff told them that, if they did not want to be called as witnesses, then they needed to sign an affidavit. Id. Plaintiff said that they could sign a prepared affidavit that he had made, or they could make their own. Id. Additionally, Plaintiff stated that he would subpoena his co-workers to testify if they did not submit affidavits. Id.

A group of co-workers present at Plaintiff's meeting thereafter reported the December 19, 2011[2/] incident to Human Resources. Def.'s CSF Ex. 17-29, ECF No. 36-20, Ex. 18-3, ECF No. 36-21. Defendant HC&S conducted an internal investigation in response to the December 19, 2011 incident. ILWU's CSF Ex. 18 at 3, ECF No. 36-21. During this investigation, Defendant HC&S learned of alleged harassing behavior by Plaintiff towards a female co-worker, May Lynn Maukele ("Maukele"). FAC at 13, ¶ 39, ECF No. 25. Defendant HC&S investigated Maukele's claims and the December 19, 2011 incident by interviewing the HC&S employees who witnessed the events. Def. ILWU's CSF Ex. 17. Representatives from the ILWU were present at the witness interviews. Id.

On January 5, 2012, Defendant HC&S suspended Plaintiff while it performed additional investigations into the December 19, 2011 incident and Plaintiff's alleged harassment of Maukele. Id. On January 6, 2013, the ILWU filed a step 1 grievance with HC&S regarding Plaintiff's suspension. Plntf.'s Opp. Ex. 16, ECF No. 13. On January 18, 2012, after Defendant HC&S completed its investigation, Defendant HC&S terminated Plaintiff's employment

---

[2/]   Defendant ILWU's exhibits indicate that Plaintiff's meeting with his co-workers occurred on December 21, 2011. See Def.'s CSF Ex. 17-29, ECF No. 36-20, Ex. 18-3, ECF No. 36-21. Plaintiff's FAC is not clear as to the specific date when the co-worker meeting occurred. See FAC at 12-13, ¶ 38. At this point in the proceedings, the Court finds that the discrepancy between the dates is not material, and uses the December 19, 2011 date because it is listed in Plaintiff's FAC.

retroactive to January 5, 2012.  Plntf.'s Opp. Ex. 17, ECF No. 13.  On January 20, 2013, the ILWU filed a step 2 grievance requesting HC&S to reinstate Plaintiff's employment; after meeting with Plaintiff and an ILWU representative, the HC&S Second Step Committee denied the grievance.  Def. ILWU's CSF Exs. 7-9, ECF Nos. 36-10, 36-11, 36-12.  On January 25, 2012, the ILWU filed a step 3 grievance.  HC&S subsequently denied the grievance on January 26, 2012 after meeting with Plaintiff and an ILWU representative.  Id. at Exs. 10 & 11.

Meanwhile, Maukele filed a Petition for a Temporary Restraining Order against Plaintiff on January 19, 2012, in the Second Circuit Court of the State of Hawaii.  Plntf.'s Opp. Ex. 27, ECF No. 48.  After holding a hearing and evaluating Maukele's and Plaintiff's testimony, the circuit court judge granted Maukele's injunction against Plaintiff for a period of three years on January 30, 2012.  Id.

As part of the ILWU's investigation, the union sent requests to HC&S and Plaintiff regarding their evidentiary support for their respective positions.  Def. ILWU's CSF Ex. 13, 14, 15, 16.  The ILWU also requested an in-house attorney, Brad Russell, to issue a recommendation regarding whether or not to arbitrate Plaintiff's termination grievance.  Id. at Ex. 18. Russell issued a 21-page report examining the legal claims of HC&S and Plaintiff and ultimately concluded that, based on HC&S's

numerous witness statements and Maukele's injunction, that the ILWU should not arbitrate Plaintiff's grievance.  Id.  The ILWU issued a Notice of Decision Not to Arbitrate Grievance on May 7, 2012.  Def.'s CSF Ex. 19, ECF No. 36-22.  Plaintiff appealed the ILWU's decision dated May 11, 2012, to Wesley Furtado, the International Vice President of the ILWU.  Id. at Ex. 22.  The ILWU held a hearing regarding the decision not to arbitrate on May 25, 2012.  Id. at Ex. 23.  Furtado denied Plaintiff's appeal via a letter dated July 3, 2012.  Id. at Ex. 27.

### B. Other Administrative Proceedings

At some point in time, Plaintiff filed a claim for unemployment, which was originally denied by the State of Hawaii Department of Labor and Industrial Relations on the basis that Plaintiff was discharged for misconduct.  Plntf.'s Opp. Ex. 28, ECF No. 48.  Plaintiff apparently appealed the decision, and the appeals officer reversed and allowed the payment of unemployment benefits on June 15, 2012.  Id.  The appeals officer stated that the employer failed to meet its burden of proof that Plaintiff was discharged for misconduct related to work.  Id.

On November 28, 2012, Plaintiff filed a charge against the ILWU for "failing and refusing to take his grievance over his termination to arbitration."  Plntf.'s Opp. Ex. 29, ECF No. 48. The Regional Director for the NLRB issued a Decision to Dismiss Plaintiff's charge on January 30, 2013.  Id. at Ex. 29-1.  The

2013 decision stated that the ILWU did not breach its duty of fair representation, and that the ILWU received an attorney letter on April 30, 2012, advising not to arbitrate.  <u>Id.</u> Plaintiff appealed the Regional Director's decision, but the General Counsel of the NLRB denied Plaintiff's appeal and refused to issue a complaint.  Def. ILWU's CSF Ex. 34, ECF No. 36-37.

## STANDARD

### A. Motion to Dismiss

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011).

Under Rule 12(d), "[i]f, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  The parties must have "a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  Because the parties in this case have presented matters outside the pleadings and the Court provided proper notice, the Court converts

Defendant ILWU's motion to dismiss into a motion for summary judgment.  <u>See</u> ECF No. 55.

## B. Motion for Summary Judgment

A party may move for summary judgment on any claim or defense - or part of a claim or defense - under Federal Rule of Civil Procedure ("Rule") 56.  Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  <u>Maxwell v. Cnty. of San Diego</u>, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment."  <u>Nat'l Ass'n of Optometrists & Opticians v. Harris</u>, 682 F.3d 1144, 1147 (9th Cir. 2012).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

-14-

judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (citation omitted).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." <u>United States v. Arango</u>, 670 F.3d 988, 992 (9th Cir. 2012) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986)). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Scott</u>, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. <u>Avalos v. Baca</u>, 596 F.3d 583, 587 (9th Cir. 2010).[3/] If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Sluimer v. Verity, Inc.</u>, 606 F.3d 584, 587 (9th Cir. 2010). The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is

---

[3/] When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted). In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. <u>Id.</u> (citation omitted).

-15-

"significantly probative or more than merely colorable." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009) (citation omitted).  Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." Parth v. Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir. 2010) (citation omitted).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess credibility.  In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008).[4/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. Anderson, 477 U.S. at 250-51.

---

[4/]  Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012).

**C. Pro Se Litigants**

The Ninth Circuit has held that "an ordinary pro se litigant, like other litigants, must comply strictly with the summary judgment rules."[5/] Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citing Bias v. Moynihan, 508 F.3d 1212, 1219 (9th Cir. 2007)); Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th Cir. 1986). Because trial courts "generally do not intervene to save litigants from their choice of counsel . . . . [a] litigant who chooses himself as legal representative should be treated no differently." Jacobsen, 790 F.2d at 1364-65. District courts therefore have no duty "to search for evidence that would create a factual dispute." Bias, 508 F.3d at 1219.

The Court in this particular case is disturbed by the lack of transparency regarding Plaintiff's pro se status and the extent to which he has been assisted by counsel. First, the Court notes that Plaintiff in his First Amended Complaint states that he is "appearing pro-se to economize his legal fees and to use the lawyers [w]orking on his behalf as cost effectively as possible." FAC at 2, ¶ 1, ECF No. 25. Therefore, it appears that Plaintiff does have an attorney, or attorneys, working on his behalf at times, even though there is no attorney officially

---

[5/] The Court notes that pro se prisoners are afforded more leniency regarding the standards for summary judgment; however, Plaintiff is not a prisoner representing himself pro se. See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

appearing on the record. Second, at Plaintiff's hearing on June 26, 2013, regarding the first motion to dismiss filed by HC&S, Mr. Shawn Luiz made a special appearance as "counsel" for Plaintiff. See ECF No. 17. Mr. Luiz moved to amend the Complaint to remove the claims that Defendant HC&S argued were not viable and to add certain other claims. Id; ECF No. 18. The Court granted Plaintiff's motion to amend, and required the First Amended Complaint to be filed by July 8, 2013. ECF No. 18. Plaintiff requested the Court to extend his deadline by fifteen days because Mr. Luiz was absent on a trip during the first due date set by the Court for the First Amended Complaint. ECF Nos. 24 & 26.

Because of the ambiguity of the extent of Mr. Luiz's involvement in this case thus far, the Court at the November 18, 2013 hearing regarding Defendant ILWU's Motion for Summary Judgment questioned Plaintiff as to Mr. Luiz's participation in the case. With respect to the First Amended Complaint, Plaintiff stated that he waited for Mr. Luiz to return from his trip so that he could review the First Amended Complaint before Plaintiff submitted it to this Court. Regarding his Opposition, Plaintiff indicated that Mr. Luiz helped him with drafting the "standard of review" and the law cited therein. Plaintiff claims that he drafted the First Amended Complaint and the discussion section of his Opposition.

This Court in a previous case noted that an attorney's substantial assistance in drafting a pro se plaintiff's filings raises concerns regarding fairness and ethics in the legal profession. Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1222-23 (D. Haw. 2010). The Court observed that "the standard practice of federal courts is to interpret filings by pro se litigants liberally and to afford greater latitude as a matter of judicial discretion . . . . Therefore, allowing a pro se litigant to receive such latitude in addition to assistance from an attorney would disadvantage the nonoffending party." Id. at 1222 (quoting Ricotta v. State, 4 F. Supp. 2d 961, 986 (S.D. Cal. 1998). Additionally, the Court noted that "having a litigant appear to be pro se when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is [dis]ingenuous to say the least; it is far below the level of candor which must be met by members of the bar." Id. at 1223 (quoting Ricotta, 4 F. Supp. 2d at 986). Such conduct implicates the ABA's Model Rule of Professional Conduct 8.4(c), which provides that attorneys should not "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." See Smallwood, 730 F. Supp. 2d at 1222-23.

In light of Plaintiff's acknowledgment of Mr. Luiz's assistance, the Court will not afford greater latitude to Plaintiff regarding matters where Mr. Luiz provided such

assistance.  As an example, Plaintiff in his Opposition provides "materials extrinsic to the pleadings" while explicitly acknowledging that the submission of such materials converts a motion to dismiss into a motion for summary judgment.  Because Plaintiff states that Mr. Luiz assisted him with the "standard of review", i.e. the law or cases involving summary judgment, the Court will not afford Plaintiff greater latitude as far as his strategic decisions and compliance with the rules for summary judgment.  See Smallwood, 730 F. Supp. 2d at 1223 (holding that the court would not construe the plaintiff's pleadings liberally because plaintiff had been assisted by counsel).

Additionally, Plaintiff attached numerous exhibits and a declaration, but he failed to submit a Concise Statement of Facts as required by the United States District Court for the District of Hawaii Local Rule 56.1.  For oppositions to motions for summary judgment, Local Rule 56.1(b) requires a "single concise statement that admits or disputes the facts set forth in the moving party's concise statement, as well as sets forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated."  Local Rule 56.1(f) states that "the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties."

-20-

Regarding Local Rule 56.1, the Court observes that, while Plaintiff appears to be representing himself pro se, he is still required to follow the rules of civil procedure.  Motoyama v. Haw. Dep't of Transp., 864 F. Supp. 2d 965, 975 (D. Haw. 2012) (citing King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987)) ("pro se litigants must follow the same rules of procedure that govern other litigants").  Moreover, in light of Mr. Luiz's knowledge of and assistance with Plaintiff's response to the ILWU's motion for summary judgment, the Court is not inclined to give deference regarding Plaintiff's failure to follow the Local Rules.  As such, the Court may, but is not required to, consider parts of Plaintiff's exhibits not referenced in a concise statement of facts or directly cited to in his Opposition.

## DISCUSSION

### I. Statute of Limitations

#### A. Plaintiff's Duty of Fair Representation Claims

In his First Amended Complaint, Plaintiff claims that the ILWU did not provide "fair representation in retaliation for exercising his free speech as a union member."  FAC at 21, ¶ 61, ECF No. 25.  Defendant ILWU argues that Plaintiff's duty of fair representation claims are barred by the six-month statute of limitations set forth in the National Labor Relations Act, 29 U.S.C. § 160(b).  Def. ILWU's Motion at 18, ECF No. 35-1. Plaintiff argues that he is pleading a "Union free speech" claim

-21-

as opposed to a "hybrid" claim which involves the duty of fair representation against the union.  See Plntf.'s Opp. at 2, ECF No. 48.

Notwithstanding Plaintiff's characterization of his claims, the Court concludes that Plaintiff alleges a fair representation claim.  As part of Plaintiff's case, the fact finder would need to find, inter alia, that the ILWU violated the duty of fair representation in order to conclude that the ILWU violated Plaintiff's free speech rights.  Additionally, Plaintiff's First Amended Complaint and his Opposition are replete with accusations that the ILWU failed to address numerous grievances presented by Plaintiff from 2011 through 2012.  See Plntf.'s Opp. at 6-15, ECF No. 48, FAC at 7-8, ¶ 26, 15-16, ¶ 44, 46 ("Plaintiff believed that third party defendant ILWU Local 142, failed to provide him its duty of fair representation.").  The Ninth Circuit has held that such references constitute a fair representation claim.[6/]  See Galindo v. Stoody, 793 F.2d 1502, 1513 (9th Cir. 1986) (holding that a fair representation claim was raised when record contained direct references to whether the union's investigation and representation of plaintiff's grievance was a breach of the duty of fair representation).  As a result,

_____

[6/] Additionally, at the hearing, Plaintiff characterized his claims as the union's failure to address or investigate his grievances; he never mentioned his LMRDA claim.  When asked why Plaintiff added the ILWU as a defendant, Plaintiff directly stated that it was because the ILWU mishandled his grievances.

the Court examines whether or not Plaintiff's fair representation claims are timely.

In his Opposition, Plaintiff alleges that the ILWU failed to fairly represent him in the following grievances: (1) RRA11-019 filed on June 6, 2011, involving a class action grievance against bootlegging and favoritism (Plntf.'s Ex. 1), (2) RRA11-023 filed on June 15, 2011, involving HC&S's failure to pay Plaintiff as a "Level A" electrician (Plntf.'s Ex. 4), (3) RRA11-024 filed on June 27, 2011, regarding alleged hostile working conditions and harassment in radio communications (Plntf.'s Ex. 12), (4) RRA11-038 filed on November 18, 2011, regarding Acpal's discipline of Plaintiff for altering a company coverall (Plntf.'s Ex. 15), (5) RRA11-041 filed on November 21, 2011, regarding alleged hostile working conditions and harassment from Pacubas' and Acpal's report to human resources stating that Plaintiff damaged company property (Plntf.'s Ex. 17), and RRA12-001 filed on January 6, 2012, regarding Plaintiff's suspension and termination of employment from Maukele's sexual harassment allegations (Plntf.'s Ex. 22 & 25).

The statute of limitations for a duty of fair representation claim is six months. DelCostello v. Int'l Brotherhood of Teamsters et al., 462 U.S. 151, 170 (1983); Galindo v. Stoody, 793 F.2d 1502, 1513 (9th Cir. 1986). Plaintiff's original Complaint filed on December 21, 2012, did

not name ILWU as a defendant, nor was it served on ILWU.   See Complaint, ECF No. 1.   Plaintiff first filed a claim against the ILWU when he filed his First Amended Complaint on July 22, 2013. Compare Complaint, ECF No. 1, with First Amended Complaint, ECF No. 25.   For most of the above grievances, even if the Court used the earlier date of December 21, 2012, Plaintiff's claim would be untimely.   To fall within the statute of limitations, Plaintiff's duty of fair representation claims must have accrued no earlier than June 21, 2012 (six months before December 21, 2012).

The Ninth Circuit has held in Galindo v. Stoody Co. that the limitations period begins to run "when an employee knows or should know of the alleged breach of duty of fair representation by a union."   793 F.2d 1502, 1509 (9th Cir. 1986). In terms of grievances, "the simplest case is one where a union decides not to file a grievance; the cause of action generally accrues when the employee learns or should have learned of the union's decision."   Id.; Harris v. Alumax Mill Products, Inc., 897 F.2d 400, 404 (9th Cir. 1990).   In the present case, Plaintiff alleges that ILWU breached its duty of fair representation by failing to pursue his grievances to arbitration.   Plntf.'s Opp. at 18, ECF No. 48.   Accordingly, Plaintiff's cause of action accrued when ILWU notified him of the decision not to arbitrate, which indicated that ILWU would not pursue his grievance any further.   See Stallcop v. Kaiser Found.

Hospitals, 820 F.2d 1044, 1049 (9th Cir. 1987) (holding that duty of fair representation claim accrued when union sent plaintiff letter indicating it would "pursue her grievance no further").

Regarding grievances RRA11-023 (Level-A rate of pay), RRA11-038 (coverall issue), and RRA11-041 (alleging Plaintiff damaged company property), the record reflects that the ILWU issued decisions not to arbitrate these grievances on April 2, 2012.  Plntf.'s Exs. 4-1, 11, 15-2, and 17-1.  Regarding grievance RRA11-019 (class action grievance against bootlegging and favoritism), the record does not indicate when the ILWU sent Plaintiff a notice that it would not take further action on the grievance.  However, for RRA11-019, RRA11-023, RRA11-038, and RRA11-041, Plaintiff states in his First Amended Complaint that he was notified in May 2012 that the ILWU would not pursue arbitration "of any of his grievances."  FAC at 19, ¶ 54, ECF No. 25.  Therefore, it appears that Plaintiff's claims accrued before June 21, 2012 because Plaintiff was notified of ILWU's decision not to arbitrate these grievances at least a month before June 21, 2012.  The Court therefore GRANTS Defendant ILWU's Motion for Summary Judgment as to Plaintiff's fair representation claims related to RRA11-019, RRA11-023, RRA11-038, and RRA11-041.

For RRA11-024 (hostile working conditions and harassment regarding radio communications), ILWU issued a decision not to arbitrate the grievance on May 7, 2012.  Plntf.'s

Exs. 12-1.  Plaintiff acknowledged that he received notification of the ILWU's decision in May 2012 (FAC at 19, ¶ 54), but the record indicates that Plaintiff appealed the ILWU's decision regarding RRA11-024 and RRA12-001 (grievance regarding his termination) to Wesley Furtado, the International Vice President of the ILWU.  Def. ILWU's CSF Ex. 23, ECF No. 36-25.  Plaintiff's appeal was subsequently denied by Furtado on July 3, 2012.  Def. ILWU's CSF Ex. 27, ECF No. 36-30.

The Ninth Circuit in <u>Galindo</u> observed that a fair representation claim may be tolled while an employee "pursues intra-union grievance procedures."  793 F.2d at 1510.  While Plaintiff's appeal to Furtado is not in itself a grievance procedure, the Ninth Circuit's rationale that "the policy of non-judicial resolution of labor disputes should outweigh the policy of prompt resolution of labor disputes in cases where the pursuit of contractual remedies would toll the statute for only a few months" applies in this case.  <u>Galindo</u>, 793 F.2d at 1510; <u>see also</u> <u>Magallanez v. Engineers & Scientists of California, Local 20, Int'l Fed'n of Prof'l & Technical Engineers</u>, 2:11-CV-03466-GEB, 2012 WL 6088302 at *3-4 (E.D. Cal. Dec. 6, 2012) (holding that intra-union appeal of decision not to arbitrate tolled statute of limitations).  As a result, Plaintiff's claims regarding RRA11-024 and RRA12-001 were tolled until July 3, 2012.

The Court also notes that Plaintiff's filing of his NLRB charge against the ILWU for "refusing to take his grievance over his termination to arbitration" did not toll his claims beyond July 3, 2012.  <u>See</u> Plntf.'s Opp. Ex. 29, ECF No. 48.  The Ninth Circuit has held that the filing of an NLRB action does not toll the six-month statute of limitations for <u>DelCostello</u> duty of fair representation claims.  <u>Conley v. Int'l Bhd. of Elec. Workers, Local 639</u>, 810 F.2d 913, 916 (9th Cir. 1987); <u>Harris v. Alumax Mill Products, Inc.</u>, 897 F.2d 400, 404 (9th Cir. 1990); <u>Grimmett v. Brown</u>, 75 F.3d 506, 515 (9th Cir. 1996).  As a result, the accrual date of Plaintiff's claim remains July 3, 2012.

Even if the accrual date for Plaintiff's RRA11-024 and RRA12-001 fair representation claims is July 3, 2012,[7] Plaintiff

---

[7] The Court notes that Furtado's letter dated July 3, 2012 does not specifically reference grievance number RRA11-024, even though correspondence regarding the union appeal mentions RRA11-024 in reference to the May 25, 2012 hearing date.  <u>See</u> Def.'s CSF Exs. 23-27, ECF No. 36.  The Court observes that, according to both Plaintiff and the ILWU, the issues involved in the appeals of RRA11-024 (alleging abuse from supervisor that resulted in Plaintiff's alleged harassment of his co-workers to obtain affidavits) and RRA12-001 (Plaintiff's termination from his co-workers' complaints of harassment and his alleged sexual harassment of Maukele) were closely related because the original investigation of Plaintiff's claims against his supervisor (RRA11-024) resulted in the December 19, 2011 incident and the termination investigations (RRA12-001).  <u>See</u> Def. ILWU's CSF Ex. 22, Plntf.'s Opp. at 9-12, ECF No. 48.  Accordingly, it appears that Furtado's letter addressed both appeals because Furtado specifically mentions that he based his decision in part on the testimony and evidence presented at the hearing conducted on May
(continued...)

must show that his First Amended Complaint filed on July 22, 2013, that first names the ILWU as a party relates back to the date of his initial Complaint filed on December 21, 2012.  If not, then even these fair representation claims are untimely.

Federal Rule of Civil Procedure 15(c) provides the rule explaining the "relation back doctrine" with respect to adding additional parties:

> (1) **When an Amendment Relates Back.**  An amendment to a pleading relates back to the date of the original pleading when:
> . . . .
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule

---

7/ (...continued)
25, 2012.  Def. ILWU's CSF Ex. 27, ECF No. 36-30.  Regardless of whether or not the ILWU omitted the reference to the specific grievance number in the July 3, 2012 letter heading because of a clerical error, Plaintiff in his Opposition, Declaration, and Exhibits does not dispute that he knew by July of 2012 that the ILWU would take no further action on his grievance.  See generally, ECF No. 48.  Furthermore, Plaintiff in a letter dated September 5, 2012 stated that "the grievance procedure and all internal remedies is now concluded" and that his claims would be submitted to a court.  See Plntf.'s Opp. Ex. 24-2, ECF No. 48. Based on the record, Plaintiff indicated that he knew more than six months before July 22, 2013 that the ILWU's decision not to arbitrate was final.  Plaintiff has not made any argument or presented any evidence indicating otherwise; as such, Plaintiff has not raised a genuine issue of material fact regarding whether or not the statute of limitations bars claims based on his grievances.

4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

In order to change a party in a complaint, a plaintiff must meet the requirement in Rule 15(c)(1)(B) in addition to the requirements listed in Rule 15(c)(1)(C).  With respect to Section (c)(1)(B), Plaintiff's original Complaint alleges that the ILWU ignored his request to obtain copies of witness statements and the identity of witnesses to address his grievance.  Complaint at 12-13, ¶ 36.  Plaintiff also alleged in his Complaint that the union denied his request to arbitrate his grievance.  Id. at 13, ECF No. 1.  Accordingly, the claims listed in the First Amended Complaint arose out of the "conduct, transaction, or occurrence set out – or attempted to be set out – in the original [Complaint]."  Fed. R. Civ. P. 15(c)(1)(B).

With respect to Section (c)(1)(C)(i), ILWU's counsel at the hearing admitted that the ILWU received notice of Plaintiff's action against HC&S shortly after it was filed on December 21, 2012.  The ILWU does not dispute in their Motion or at the hearing that the notice requirement of Section (c)(1)(C)(i) has been met.

However, with respect to Section (c)(1)(C)(ii),
Plaintiff submits no evidence indicating that the ILWU should
have discovered within the 120 day time frame under Rule 4(m)
that "the action would have been brought against it, but for a
mistake concerning the proper party's identity."  Fed. R. Civ. P.
15(c)(1)(c)(ii).  Plaintiff did not argue in his Opposition or at
the hearing that he made a mistake as to the roles that HC&S and
ILWU "played in the conduct, transaction, or occurrence giving
rise to [his] claim."  See Krupski v. Costa Crociere S. p. A.,
560 U.S. 538, 130 S. Ct. 2485, 2493, 177 L. Ed. 2d 48 (2010).

In fact, Plaintiff's own exhibits demonstrate that in
September 2012, he was upset with the ILWU's decision not to
arbitrate and indicated that his "contention" was that the ILWU
"violated my rights as a member for gross misrepresentations and
unfair labor practice."  Plntf.'s Opp. at Ex. 24-2.  Moreover,
Plaintiff had filed an NLRB charge against the ILWU on November
28, 2012, alleging his fair representation claim.  Plntf.'s Opp.
Ex. 29, ECF No. 48.  Notwithstanding Plaintiff's position in
September and November 2012 indicating that he obviously knew of
the ILWU's existence and role, Plaintiff did not name the ILWU as
a party in his December 2012 action.  See Complaint, ECF No. 1.

More importantly, it is clear that the ILWU would not
have known that the action would have been brought against it
"but for a mistake concerning the proper party's identity"

-30-

because the ILWU was named in the original Complaint.  See Compl. at 2, 4, 13, ECF No. 1.  Besides the allegation in the Complaint that the union "denied his request to arbitrate his termination grievance," Plaintiff alleges that he previously sued the ILWU and received a favorable court decision, which indicates that he was well aware of his ability to sue the ILWU to obtain relief. Compl. at 4, ¶ 12, ECF No. 1.  Moreover, Plaintiff himself served as a unit chairman for the ILWU in 1992 and a business agent of the ILWU in 1993.  Decl. of Casumpang at ¶¶ 3-4, ECF No. 48. These uncontested facts demonstrate that Plaintiff was certainly familiar with the ILWU and its role in employment disputes. Plaintiff does not submit or identify any evidence in the record raising a genuine issue of material fact regarding whether or not Plaintiff made a "mistake" as to the ILWU's identity as opposed to a deliberate decision not to sue the ILWU in this case.  See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 130 S. Ct. 2485, 2495-96, 177 L. Ed. 2d 48 (2010).  The Court therefore GRANTS Defendant ILWU's Motion for Summary Judgment as to Plaintiff's fair representation claims regarding grievances RRA11-024 and RRA12-001.

## B. Plaintiff's LMRDA Freedom of Speech Claims

Plaintiff alleges that the ILWU deliberately failed to fairly represent him in his grievances in order to retaliate against him for exercising his free speech rights as a union

-31-

member.  FAC at 21, ¶ 61, ECF No. 25.  Defendant ILWU argues that Plaintiff's LMRDA claim is also subject to the six-month statute of limitations because the LMRDA claim is effectively a fair representation claim.  Def. ILWU's Motion at 21, ECF No. 35-1. Plaintiff argues in his Opposition that his LMRDA free speech claims are governed by the Hawai'i personal injury statute of limitations, which provides for a period of two years to file a claim.  Plntf.'s Opp. at 3, ECF No. 48; see Haw. Rev. Stat. § 657-7.

In <u>Reed v. United Transp. Union</u>, the Supreme Court concluded that free speech claims under the LMRDA are governed by the state statute of limitations for personal injury claims.  488 U.S. 319, 326, 109 S. Ct. 621, 626, 102 L. Ed. 2d 665 (1989). However, the Supreme Court provided a lengthy discussion about the differences of hybrid actions involving grievance and arbitration procedures as opposed to typical LMRDA § 101(a)(2) claims, which involve "an internal union dispute not directly related in any way to collective bargaining or dispute settlement under a collective bargaining agreement."  <u>Id.</u> at 330, 628.  When discussing the former scenario, the Supreme Court in <u>Reed</u> acknowledged that the six-month limitations period should be applied to claims that involved "private settlement of disputes under [the collective-bargaining agreement] through grievance-and-arbitration procedures."  <u>Id.</u> at 329, 628.

-32-

Circuit courts examining labor disputes after Reed have held that the six-month statute of limitations applies in certain cases involving hybrid claims that are characterized as LMRDA § 101(a)(2) freedom of speech claims.  See Walls v. Int'l Longshoremen's and Warehousmen's Union, Local 23, 10 Fed. Appx. 485, 488 (9th Cir. 2001) (holding that dispute involving employer and union's responsibilities to run a joint hiring hall was subject to six-month instead of state statute of limitations), Linnane v. General Elec. Co., 948 F.2d 69 (1st Cir. 1991) (holding that plaintiff's claim that union failed to process grievance involving discharge from employer was subject to six-month instead of LMRDA statute of limitations), Cantrell v. Int'l Brotherhood of Electrical Workers, 32 F.3d 465, 466-67 (10th Cir. 1994) (holding that plaintiff's allegation that union failed to process his grievance and delayed arbitration was governed by six-month instead of LMRDA statute of limitations), cf. Int'l Ass'n of Machinists & Aerospace Workers v. Tennessee Valley Auth., 108 F.3d 658, 663 (6th Cir. 1997) (action alleging that employer breached collective bargaining agreement and unions breached their duty of fair representation in grievance and arbitration proceedings was subject to six-month statute of limitations).  The courts apply the reasoning of Reed and DelCostello and examine whether or not the claims implicate federal policies of furthering "stable bargaining relationships"

and "private dispute resolution" between employers and unions as opposed to only internal union affairs.  See id., Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991) (holding that LMRDA statute of limitations should be applied to case where "a dispute is entirely internal to the union"), cf. Pruitt v. Carpenters' Local Union No. 225 of United Bhd. of Carpenters & Joiners of Am., 893 F.2d 1216, 1221 (11th Cir. 1990) (holding that state statute of limitations applies because case did not involve hybrid suit, a collective bargaining agreement, or arbitration award).

In this case, Plaintiff's claims do not involve "an internal union dispute not directly related in any way to collective bargaining or dispute settlement under a collective bargaining agreement."  Reed, 488 U.S. at 329, 109 S. Ct. at 628. To the contrary, Plaintiff's FAC and his Opposition are focused on his discontent with the ILWU's resolution of his grievances with his employer.[8/]  See generally, FAC, ECF No. 25, and Plntf.'s Opp., ECF No. 48.  Accordingly, Plaintiff's claims implicate "the grievance machinery" which is "at the very heart

---

[8/]  Additionally, Plaintiff at the hearing on November 18, 2013 stated that he filed a complaint involving the ILWU's duty of fair representation with the NLRB because "it's a misrepresentation case."  Plaintiff claimed at the hearing that he added the ILWU to this lawsuit because they "mishandle[d] my grievances."  All of the alleged misconduct identified by Plaintiff at the hearing involved the handling of his grievances and the duty of fair representation.

of the system of industrial self-government." <u>DelCostello</u>, 462 U.S. at 168.  As noted in <u>DelCostello</u>, "the grievance and arbitration procedure often processes disputes involving interpretation of critical terms in the collective-bargaining agreement affecting the entire relationship between company and union." <u>Id.</u> at 169.  The six-month statute of limitations was therefore adopted from § 10(b) of the National Labor Relations Act in order to facilitate certainty in the company and union's relationship by encouraging timely resolution of disputes affecting the collective bargaining agreement.  <u>Id.</u>  Allowing Plaintiff to avoid the six-month statute of limitations by stating that his claims are LMRDA free speech claims would run contrary to the Supreme Court's holding and rationale in <u>DelCostello</u>.  Accordingly, the Court GRANTS Defendant ILWU's Motion for Summary Judgment as to Plaintiff's LMRDA claims because they are based on his fair representation claims.  <u>See also</u> <u>Shanks v. N. California Cement Masons Joint Apprenticeship Training Comm.</u>, C-93-0609 MHP, 1993 WL 300063 (N.D. Cal. July 27, 1993) (holding that LMRDA claim based on duty of fair representation was subject to six-month statute of limitations).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS Defendant International Longshore and Warehouse Union, Local 142's Motion

for Summary Judgment as to the claims in Plaintiff's First

Amended Complaint against the ILWU.[9/, 10/]

      IT IS SO ORDERED.

      DATED: Honolulu, Hawai'i, November 25, 2013.



                              _____
                                Alan C. Kay
                                Sr. United States District Judge

---

    [9/] Because the Court grants the ILWU's Motion for Summary Judgment on the statute of limitations ground, the Court finds that it is not necessary to address ILWU's Motion for Summary Judgment as to the merits of Plaintiff's claims.

    [10/] At the hearing, Plaintiff made a verbal request under "Rule 56(f)" to depose certain officers of the ILWU. The Court assumes that Plaintiff intended to make the request under Rule 56(d), which requires a nonmovant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d). The Court denies Plaintiff's request as untimely because such a motion must be made "prior to the summary judgment hearing." Ashton-Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir. 1990). Additionally, Plaintiff did not file an affidavit or declaration as required under Rule 56(d). Furthermore, granting Plaintiff's verbal request to depose ILWU officers in order to show their bias would be futile because such discovery would not prevent summary judgment regarding the statute of limitations issue in this case. See Getz v. Boeing Co., 654 F.3d 852, 868 (9th Cir. 2011) (holding that district court did not abuse its discretion in declining plaintiff's request for discovery because plaintiff failed to show that the evidence, if it existed, would prevent summary judgment). Lastly, the Court notes that Mr. Luiz assisted Plaintiff with the standard of review for summary judgment. In light of Plaintiff's assistance from counsel regarding the ILWU's Motion, the Court is not inclined to give leniency to Plaintiff regarding this belated request under the summary judgment rules.